# Renters Insurance Program

## POLICY INDEX

Page

AGREEMENT ...................................................2

DEFINITIONS ..................................................2

SECTION I - PROPERTY COVERAGES ..........................3-6

   Coverage C - Personal Property ...........................3-4
   Coverage D - Loss of Use ................................4
   Additional Coverages ...................................4-6
     Debris Removal .....................................4
     Reasonable Repairs .................................4
     Trees, Shrubs and Other Plants ............................4
     Fire Department Service Charge ....................4-5
     Property Removed....................................5
     Credit Card, Fund Transfer Card, Forgery
      and Counterfeit Money............................5
     Loss Assessment ...................................5
     Collapse ...........................................5-6
     Glass or Safety Glazing Material ........................6
     Building Additions and Alterations ......................6
     Ordinance or Law ..................................6

SECTION I - PERILS INSURED AGAINST ....................6-7

SECTION I - EXCLUSIONS ................................7-8

SECTION I – CONDITIONS ..............................8-10
   Insurable Interest and Limit of Liability .................8
   Your Duties After Loss............................8-9
   Loss Settlement...................................9
   Loss to a Pair or Set ...............................9
   Glass Replacement ...............................9
   Appraisal........................................9
   Other Insurance ..................................9
   Action Against Us.................................9
   Our Option ......................................9
   Loss Payment ....................................9
   Abandonment of Property .........................9
   No Benefit to Bailee ..............................9
   Nuclear Hazard Clause............................9

Page

Recovered Property...................................9
Volcanic Eruption Period .............................9
Loss Payee .........................................9

SECTION II – LIABILITY COVERAGES............................10
   Coverage E - Personal Liability.........................10
   Coverage F - Medical Payments to Others..............10

SECTION II – EXCLUSIONS .........................10-12

SECTION II – ADDITIONAL COVERAGES.................12-13
   Claim Expenses .................................12
   First Aid Expenses...............................12
   Damage to Property of Others ...................12-13
   Loss Assessment ................................13

SECTION II – CONDITIONS .........................13
   Limit of Liability .................................13
   Severability of Insurance .........................13
   Duties After Loss ................................13
   Duties of an Injured Person .....................13-14
   Payment of Claims ..............................14
   Action Against Us...............................14
   Bankruptcy of an Insured ........................14
   Other Insurance ................................14

SECTIONS I AND II - CONDITIONS...................14
   Policy Period ...................................14
   Concealment or Fraud ..........................14
   Liberalization Clause ............................14
   Waiver or Change of Policy Provisions .................14
   Cancellation ..................................14-15
   Nonrenewal ...................................15
   Assignment ....................................15
   Subrogation ...................................15
   Death .........................................15

IMPORTANT NOTICE ...................................16

AJ8850PC-0307

Exhibit A - 1

## AGREEMENT

We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy.

## DEFINITIONS

In this policy, "you" and "your" refer to the "named insured" shown in the Declarations and the spouse if a resident of the same household. "We," "us" and "our" refer to the Company providing this insurance. In addition, certain words and phrases are defined as follows:

1. "Bodily injury" means bodily harm, sickness or disease, including required care, loss of services and death that results.

2. "Business" means:

   a. A trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

   b. Any other activity engaged in for money or other compensation, except the following:

      (1) One or more activities, not described in items (2) through (4) below, for which no "insured" receives more than $2,000 in total compensation for the 12 months before the beginning of the policy period;

      (2) Volunteer activities for which no money is received other than payment for expenses incurred to perform the activity;

      (3) Providing home day care services for which no compensation is received, other than the mutual exchange of such services; or

      (4) The rendering of home day care services to a relative of an "insured".

3. "Insured" means you and residents of your household who are:

   a. Your relatives; or

   b. Other persons under the age of 21 and in the care of any person named above.

   If the entity named on the Declarations Page is a "business" entity, "insured" means any person while residing at the "residence premises" with the permission of the named insured.

   Under Section II, "insured" also means:

   c. With respect to animals or watercraft to which this policy applies, any person or organization legally responsible for these animals or watercraft which are owned by you or any person included in 3.a. or 3.b. above. A person or organization using or having custody of these animals or watercraft in the course of any "business" or without consent of the owner is not an "insured";

   d. With respect to any vehicle to which this policy applies:

      (1) Persons while engaged in your employ or that of any person included in 3.a. or 3.b. above; or

      (2) Other persons using the vehicle on an "insured location" with your consent.

4. "Insured location" means:

   a. The "residence premises";

   b. The part of other premises, other structures and grounds used by you as a residence and:

      (1) Which is shown in the Declarations; or

      (2) Which is acquired by you during the policy period for your use as a residence;

   c. Any premises used by you in connection with a premises in 4.a. and 4.b. above;

   d. Any part of a premises:

      (1) Not owned by an "insured"; and

      (2) Where an "insured" is temporarily residing;

   e. Vacant land, other than farm land, owned by or rented to an "insured";

   f. Land owned by or rented to an "insured" on which a one or two family dwelling is being built as a residence for an "insured";

   g. Individual or family cemetery plots or burial vaults of an "insured"; or

   h. Any part of a premise occasionally rented to an "insured" for other than "business" use.

   If the named insured is a "business" entity, the "insured location" is limited to the "residence premises".

5. "Landlord" means:

   The owner or property manager of the "residence premises".

6. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

   a. "Bodily injury"; or

   b. "Property damage".

7. "Property damage" means physical injury to, destruction of, or loss of use of tangible property.

8. "Residence employee" means:

   a. An employee of an "insured" whose duties are related to the maintenance or use of the "residence premises", including household or domestic services; or

   b. One who performs similar duties elsewhere not related to the "business" of an "insured".

9. "Residence premises" means:

   a. The one family dwelling, other structures, and grounds; or

   b. That part of any other building;

   where the "insured" resides and which is shown as the "residence premises" in the Declarations.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AJ8850PC-0307                                                    Page 2                                                    Exhibit A - 2

**SECTION I - PROPERTY COVERAGES**

**COVERAGE C – Personal Property**

We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

1. Others while the property is on the part of the "residence premises" occupied by an "insured";

2. A guest or a "residence employee", while the property is in any residence occupied by an "insured".

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage C, or $1000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

**Special Limits of Liability.** These limits do not increase the Coverage C limit of liability. The special limit for each numbered category below is the total limit for each loss for all property in that category.

1. $200 on money, bank notes, bullion, gold other than goldware, silver other than silverware, platinum, coins and medals.

2. $1000 on securities, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, personal records, passports, tickets and stamps. This dollar limit applies to these categories regardless of the medium (such as paper or computer software) on which the material exists.

   This limit includes the cost to research, replace or restore the information from the lost or damaged material.

3. $1000 on watercraft, including their trailers, furnishings, equipment and outboard engines or motors.

4. $1000 on trailers not used with watercraft.

5. $1000 for loss by theft of jewelry, watches, furs, precious and semi-precious stones.

6. $2000 for loss by theft of firearms and related equipment.

7. $2500 for loss by theft of silverware, silver-plated ware, goldware, gold-plated ware and pewterware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold or pewter.

8. $2500 on property, on the "residence premises", used at any time or in any manner for any "business" purpose.

9. $250 on property, away from the "residence premises", used at any time or in any manner for any "business" purpose. However, this limit does not apply to loss to adaptable electronic apparatus as described in Special Limits **10.** and **11.** below.

10. $1000 for loss to electronic apparatus, while in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power. Electronic apparatus includes:

    a. Accessories or antennas; or

    b. Tapes, wires, records, discs or other media;

    for use with any electronic apparatus described in this item **10.**

11. $1000 for loss to electronic apparatus, while not in or upon a motor vehicle or other motorized land conveyance, if the electronic apparatus:

    a. Is equipped to be operated by power from the electrical system of the vehicle or conveyance while retaining its capability of being operated by other sources of power;

    b. Is away from the "residence premises"; and

    c. Is used at any time or in any manner for any "business" purpose.

    Electronic apparatus includes:

    a. Accessories or antennas; or

    b. Tapes, wires, records, discs or other media;

    for use with any electronic apparatus described in this item **11.**

**Property Not Covered.** We do not cover:

1. Articles separately described and specifically insured in this or other insurance;

2. Animals, birds or fish;

3. Motor vehicles or all other motorized land conveyances. This includes:

   a. Their equipment and accessories; or

   b. Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:

      (1) Accessories or antennas; or

      (2) Tapes, wires, records, discs or other media;

      for use with any electronic apparatus described in this item **3.b.**

      The exclusion of property described in **3.a.** and **3.b.** above applies only while the property is in or upon the vehicle or conveyance.

   We do cover vehicles or conveyances not subject to motor vehicle registration which are:

   a. Used to service an "insured's" residence; or

   b. Designed for assisting the handicapped;

4. Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AJ8850PC-0307                                    Page 3                                    Exhibit A - 3

5. Property of roomers, boarders and other tenants, except property of roomers and boarders related to an "insured";

6. Property in an apartment regularly rented or held for rental to others by an "insured";

7. Property rented or held for rental to others off the "residence premises";

8. "Business" data, including such data stored in:

   a. Books of account, drawings or other paper records; or

   b. Electronic data processing tapes, wires, records, discs or other software media.

   However, we do cover the cost of blank recording or storage media, and of pre-recorded computer programs available on the retail market; or

9. Credit cards or fund transfer cards except as provided in Additional Coverages 6.

**COVERAGE D – Loss Of Use**

The limit of liability for Coverage D is the total limit for all the coverages that follow.

1. If a loss by a Peril Insured Against under this policy to covered property or the building containing the property makes the "residence premises" not fit to live in, we cover the Additional Living Expense, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

   Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

2. If a loss covered under this Section makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the:

   **Fair Rental Value**, meaning the fair rental value of that part of the "residence premises" rented to others or held for rental by you less any expenses that do not continue while the premises is not fit to live in.

   Payment will be for the shortest time required to repair or replace that part of the premises rented or held for rental.

3. If a civil authority prohibits you from use of the "residence premises" as a result of direct damage to neighboring premises by a Peril Insured Against in this policy, we cover the Additional Living Expense and Fair Rental Value loss as provided under **1**. and **2**. above for no more than two weeks.

The periods of time under **1.**, **2.** and **3.** above are not limited by expiration of this policy.

We do not cover loss or expense due to cancellation of a lease or agreement.

**ADDITIONAL COVERAGES**

1. **Debris Removal.** We will pay your reasonable expense for the removal of:

   a. Debris of covered property if a Peril Insured Against that applies to the damaged property causes the loss; or

   b. Ash, dust or particles from a volcanic eruption that has caused direct loss to a building or property contained in a building.

   This expense is included in the limit of liability that applies to the damaged property. If the amount to be paid for the actual damage to the property plus the debris removal expense is more than the limit of liability for the damaged property, an additional 5% of that limit of liability is available for debris removal expense.

   We will also pay your reasonable expense, up to $500, for the removal from the "residence premises" of:

   a. Your tree(s) felled by the peril of Windstorm or Hail;

   b. Your tree(s) felled by the peril of Weight of Ice, Snow or Sleet; or

   c. A neighbor's tree(s) felled by a Peril Insured Against under Coverage C;

   provided the tree(s) damages a covered structure. The $500 limit is the most we will pay in any one loss regardless of the number of fallen trees.

2. **Reasonable Repairs.** In the event that covered property is damaged by an applicable Peril Insured Against, we will pay the reasonable cost incurred by you for necessary measures taken solely to protect against further damage. If the measures taken involve repair to other damaged property, we will pay for those measures only if that property is covered under this policy and the damage to that property is caused by an applicable Peril Insured Against.

   This coverage:

   a. Does not increase the limit of liability that applies to the covered property;

   b. Does not relieve you of your duties, in case of a loss to covered property, as set forth in **SECTION I – CONDITION 2.d.**

3. **Trees, Shrubs and Other Plants.** We cover trees, shrubs, plants or lawns, on the "residence premises", for loss caused by the following Perils Insured Against: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles not owned or operated by a resident of the "residence premises", Vandalism or malicious mischief or Theft.

   We will pay up to 10% of the limit of liability that applies to Coverage C for all trees, shrubs, plants or lawns. No more than $500 of this limit will be available for any one tree, shrub or plant. We do not cover property grown for "business" purposes.

   This coverage is additional insurance.

4. **Fire Department Service Charge.** We will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Peril Insured Against. We do not cover fire department service charges if the property is located within the limits of the city, municipality or protection district furnishing the fire department response.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

This coverage is additional insurance. No deductible applies to this coverage.

**5.  Property Removed.** We insure covered property against direct loss from any cause while being removed from a premises endangered by a Peril Insured Against and for no more than 30 days while removed. This coverage does not change the limit of liability that applies to the property being removed.

**6.  Credit Card, Fund Transfer Card, Forgery and Counterfeit Money.**

We will pay up to $500 for:

**a.**  The legal obligation of an "insured" to pay because of the theft or unauthorized use of credit cards issued to or registered in an "insured's" name;

**b.**  Loss resulting from theft or unauthorized use of a fund transfer card used for deposit, withdrawal or transfer of funds, issued to or registered in an "insured's" name;

**c.**  Loss to an "insured" caused by forgery or alteration of any check or negotiable instrument; and

**d.**  Loss to an "insured" through acceptance in good faith of counterfeit United States or Canadian paper currency.

We do not cover use of a credit card or fund transfer card:

**a.**  By a resident of your household;

**b.**  By a person who has been entrusted with either type of card; or

**c.**  If an "insured" has not complied with all terms and conditions under which the cards are issued.

All loss resulting from a series of acts committed by any one person or in which any one person is concerned or implicated is considered to be one loss.

We do not cover loss arising out of "business" use or dishonesty of an "insured".

This coverage is additional insurance. No deductible applies to this coverage.

Defense:

**a.**  We may investigate and settle any claim or suit that we decide is appropriate. Our duty to defend a claim or suit ends when the amount we pay for the loss equals our limit of liability.

**b.**  If a suit is brought against an "insured" for liability under the Credit Card or Fund Transfer Card coverage, we will provide a defense at our expense by counsel of our choice.

**c.**  We have the option to defend at our expense an "insured" or an "insured's" bank against any

suit for the enforcement of payment under the Forgery coverage.

**7.  Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of direct loss to the property, owned by all members collectively, caused by a Peril Insured Against under **COVERAGE C – PERSONAL PROPERTY**, other than earthquake or land shock waves or tremors before, during or after a volcanic eruption.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises".

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

The limit of $1000 is the most we will pay with respect to any one loss, regardless of the number of assessments.

Condition **1.** Policy Period, under **SECTIONS I AND II – CONDITIONS**, does not apply to this coverage.

**8.  Collapse**

**a.  With respect to this Additional Coverage:**

**(1)**  Collapse means an abrupt falling down or caving in of a building or any part of a building with the result that the building or part of the building cannot be occupied for its intended purpose.

**(2)**  A building or any part of a building that is in danger of falling down or caving in is not considered to be in a state of collapse.

**(3)**  A part of a building that is standing is not considered to be in a state of collapse even if it has separated from another part of the building.

**(4)**  A building that is standing or any part of a building that is standing is not considered to be in a state of collapse even if it shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

**b.**  We insure for direct physical loss to covered property involving collapse of a building or any part of a building if the collapse was caused by one or more of the following:

**(1)**  Perils Insured Against in Coverage C - Personal Property. These perils apply to covered buildings and personal property for loss insured by this additional coverage;

**(2)**  Decay that is hidden from view, unless the presence of such decay is known to an "insured" prior to collapse;

**(3)**  Insect or vermin damage that is hidden from view, unless the presence of such damage is known to an "insured" prior to collapse;

**(4)**  Weight of contents, equipment, animals or people;

**(5)**  Weight of rain which collects on a roof; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**(6)** Use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items **(2)**, **(3)**, **(4)**, **(5)** and **(6)** unless the loss is a direct result of the collapse of a building or any part of a building.

This coverage does not increase the limit of liability applying to the damaged covered property.

**9. Glass or Safety Glazing Material.**

**a.** We cover:

**(1)** The breakage of glass or safety glazing material which is part of a building, storm door or storm window, and covered as Building Additions and Alterations; and

**(2)** The breakage, caused directly by Earth Movement, of glass or safety glazing material which is part of a building, storm door or storm window, and covered as Building Additions and Alterations; and

**(3)** The direct physical loss to covered property caused solely by the pieces, fragments, or splinters of broken glass or safety glazing material which is part of a building, storm door or storm window.

**b.** This coverage does not include loss:

**(1)** To covered property which results because the glass or safety glazing material has been broken, except as provided in **a.(3)** above; or

**(2)** On the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss, except when the breakage results directly from Earth Movement as provided for in **a.(2)** above. A dwelling being constructed is not considered vacant.

Loss to glass covered under this **ADDITIONAL COVERAGE 9.** will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

This coverage does not increase the limit of liability that applies to the damaged property.

**10. Building Additions and Alterations.** We cover under Coverage C the building improvements or installations, made or acquired at your expense, to that part of the "residence premises" used exclusively by you. The limit of liability for this coverage will not be more than 10% of the limit of liability that applies to Coverage C.

This coverage is additional insurance.

**11. Ordinance or Law.**

**a.** You may use up to 10% of the limit of liability that applies to Building Additions and Alterations for the increased costs you incur due to the enforcement of any ordinance or law which requires or regulates:

**(1)** The construction, demolition, remodeling, renovation, or repair of that part of a covered building or other structure damaged by a Peril Insured Against;

**(2)** The demolition and reconstruction of the undamaged part of a covered building or other structure, when that building or other structure must be totally demolished because of damage by a Peril Insured Against to another part of that covered building or other structure; or

**(3)** The remodeling, removal, or replacement of the portion of the undamaged part of a covered building or other structure necessary to complete the remodeling, repair, or replacement of that part of the covered building or other structure damaged by a Peril Insured Against.

**b.** You may use all or part of this ordinance or law coverage to pay for the increased costs you incur to remove debris resulting from the construction, demolition, remodeling, renovation, repair, or replacement of property as stated in **a.** above.

**c.** We do not cover:

**(1)** The loss in value to any covered building or other structure due to the requirements of any ordinance or law; or

**(2)** The costs to comply with any ordinance or law which requires any "insured" or others to test for, monitor, clean up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of, pollutants on any covered building or other structure.

Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned, or reclaimed.

This coverage is additional insurance.

**SECTION I – PERILS INSURED AGAINST**

We insure for direct physical loss to the property described in Coverage C caused by a peril listed below unless the loss is excluded in **SECTION I – EXCLUSIONS**.

**1. Fire or lightning.**

**2. Windstorm or hail.**

This peril does not include loss to the property contained in a building caused by rain, snow, sleet,

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AJ8850PC-0307                                   Page 6                                   Exhibit A - 6

sand or dust unless the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

This peril includes loss to watercraft and their trailers, furnishings, equipment, and outboard engines or motors, only while inside a fully enclosed building.

3. **Explosion.**

4. **Riot or civil commotion.**

5. **Aircraft,** including self-propelled missiles and spacecraft.

6. **Vehicles.**

7. **Smoke,** meaning sudden and accidental damage from smoke.

This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. **Vandalism or malicious mischief.**

This peril does not include loss to property on the "residence premises" if the dwelling has been vacant for more than 30 consecutive days immediately before the loss. A dwelling being constructed is not considered vacant.

9. **Theft,** including attempted theft and loss of property from a known place when it is likely that the property has been stolen.

This peril does not include loss caused by theft:

a. Committed by an "insured";

b. In or to a dwelling under construction, or of materials and supplies for use in the construction until the dwelling is finished and occupied; or

c. From that part of a "residence premises" rented by an "insured" to other than an "insured".

This peril does not include loss caused by theft that occurs off the "residence premises" of:

a. Property while at any other residence owned by, rented to, or occupied by an "insured", except while an "insured" is temporarily living there. Property of a student who is an "insured" is covered while at a residence away from home if the student has been there at any time during the 45 days immediately before the loss;

b. Watercraft, and their furnishings, equipment and outboard engines or motors; or

c. Trailers and campers.

This peril does not include loss caused by mysterious disappearance, meaning the vanishing of covered property that cannot be explained or that has been lost or misplaced.

10. **Falling objects.**

This peril does not include loss to the property contained in the building unless the roof or an outside wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. **Weight of ice, snow or sleet,** which causes damage to the property contained in the building.

This peril does not include loss caused by ice damming, meaning the formation of a ridge of ice on a roof which prevents melting snow or water from draining off the roof.

12. **Accidental discharge or overflow of water or steam** from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system or from within a household appliance.

This peril does not include loss:

a. To the system or appliance from which the water or steam escaped;

b. Caused by or resulting from freezing except as provided in the peril of freezing below; or

c. On the "residence premises" caused by accidental discharge or overflow which occurs away from the building where the "residence premises" is located.

In this peril, a plumbing system does not include a sump, sump pump or related equipment.

13. **Sudden and accidental tearing apart, cracking, burning or bulging** of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss caused by or resulting from freezing except as provided in the peril of freezing below.

14. **Freezing** of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a household appliance.

This peril does not include loss on the "residence premises" while unoccupied, unless you have used reasonable care to:

a. Maintain heat in the building; or

b. Shut off the water supply and drain the system and appliances of water.

15. **Sudden and accidental damage from artificially generated electrical current.**

This peril does not include loss to tubes, transistors, electronic components or circuitry that are a part of appliances, fixtures, computers, home entertainment units or any other types of electronic `apparatus.

16. **Volcanic eruption** other than loss caused by earthquake, land shock waves or tremors.

## SECTION I – EXCLUSIONS

We do not insure for loss caused directly or indirectly by any of the following. Such loss is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss.

1. **Ordinance or Law,** meaning any ordinance or law:

a. Requiring or regulating the construction, demolition, remodeling, renovation, or repair of property, including removal of any resulting

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AJ8850PC-0307                    Page 7                    Exhibit A - 7

debris. This exclusion **1.a.** does not apply to the amount of coverage that may be provided for under **ADDITIONAL COVERAGES, Glass or Safety Glazing Material or Ordinance or Law**;

**b.** The requirements of which results in a loss in value to property; or

**c.** Requiring any "insured" or others to test for, monitor, clean-up, remove, contain, treat, detoxify, or neutralize, or in any way respond to, or assess the effects of, pollutants.

This exclusion applies whether or not the property has been physically damaged.

**2. Earth Movement,** meaning earthquake including land shock waves or tremors before, during or after a volcanic eruption; landslide; mine subsidence; mudflow; earth sinking, rising or shifting; unless direct loss by:

**a.** Fire; or

**b.** Explosion;

ensues and then we will pay only for the ensuing loss.

This exclusion does not apply to loss by theft.

**3. Water Damage,** meaning:

**a.** Flood, surface water, waves, tidal water, overflow of a body of water, or spray from any of these, whether or not driven by wind;

**b.** Water or water borne material which backs up through sewers or drains or which overflows from a sump; or

**c.** Water below the surface of the ground, including water which exerts pressure on or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

Direct loss by fire, explosion or theft resulting from water damage is covered.

**4. Power Failure,** meaning the failure of power or other utility service if the failure takes place off the "residence premises". But, if the failure of power or other utility service results in a loss from a Peril Insured Against on the "residence premises", we will pay only for the loss or damage caused by that Peril Insured Against.

**5. Neglect,** meaning neglect of the "insured" to use all reasonable means to save and preserve property at and after the time of a loss.

**6. War,** including the following and any consequence of any of the following:

**a.** Undeclared war, civil war, insurrection, rebellion or revolution;

**b.** Warlike act by a military force or military personnel; or

**c.** Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental.

**7. Nuclear Hazard,** to the extent set forth in the Nuclear Hazard Clause of **SECTION I – CONDITIONS.**

**8. Intentional Loss,** meaning any loss arising out of any act committed:

**a.** By or at the direction of an "insured"; and

**b.** With the intent to cause a loss.

### SECTION I – CONDITIONS

**1. Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable in any one loss:

**a.** To the "insured" for more than the amount of the "insured's" interest at the time of loss; or

**b.** For more than the applicable limit of liability.

**2. Your Duties After Loss.** In case of a loss to covered property, you must see that the following are done:

**a.** Give prompt notice to us or our agent;

**b.** Notify the police in case of loss by theft;

**c.** Notify the credit card or fund transfer card company in case of loss under Credit Card or Fund Transfer Card coverage;

**d.** Protect the property from further damage. If repairs to the property are required, you must:

**(1)** Make reasonable and necessary repairs to protect the property; and

**(2)** Keep an accurate record of repair expenses;

**e.** Prepare an inventory of damaged personal property showing the quantity, description, actual cash value and amount of loss. Attach all bills, receipts and related documents that justify the figures in the inventory;

**f.** As often as we reasonably require:

**(1)** Show the damaged property;

**(2)** Provide us with records and documents we request and permit us to make copies; and

**(3)** Submit to examination under oath, while not in the presence of any other "insured", and sign the same;

**g.** Send to us, within 60 days after our request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

**(1)** The time and cause of loss;

**(2)** The interest of the "insured" and all others in the property involved and all liens on the property;

**(3)** Other insurance which may cover the loss;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AJ8850PC-0307                                    Page 8                                    Exhibit A - 8

(4) Changes in title or occupancy of the property during the term of the policy;

(5) Specifications of damaged buildings and detailed repair estimates;

(6) The inventory of damaged personal property described in **2.e.** above;

(7) Receipts for additional living expenses incurred and records that support the fair rental value loss; and

(8) Evidence or affidavit that supports a claim under the Credit Card, Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss Settlement.** Covered property losses are settled at actual cash value at the time of loss but not more than the amount required to repair or replace.

4. **Loss to a Pair or Set.** In case of loss to a pair or set we may elect to:

a. Repair or replace any part to restore the pair or set to its value before the loss; or

b. Pay the difference between actual cash value of the property before and after the loss.

5. **Glass Replacement.** Loss for damage to glass caused by a Peril Insured Against will be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

6. **Appraisal.** If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:

a. Pay its own appraiser; and

b. Bear the other expenses of the appraisal and umpire equally.

7. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only the proportion of the loss that the limit of liability that applies under this policy bears to the total amount of insurance covering the loss.

8. **Action Against Us.** No action shall apply against us unless:

a. There has been full compliance with all the terms of this policy; and

b. The action is brought within one year from the date when you discover the loss.

9. **Our Option.** If we give you written notice within 30 days after we receive your signed, sworn proof of loss, we may repair or replace any part of the damaged property with like property.

10. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

a. Reach an agreement with you;

b. There is an entry of a final judgment; or

c. There is a filing of an appraisal award with us.

11. **Abandonment of Property.** We need not accept any property abandoned by an "insured".

12. **No Benefit to Bailee.** We will not recognize any assignment or grant any coverage that benefits a person or organization holding, storing or moving property for a fee regardless of any other provision of this policy.

13. **Nuclear Hazard Clause.**

a. "Nuclear Hazard" means any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these.

b. Loss caused by the nuclear hazard will not be considered loss caused by fire, explosion, or smoke, whether these perils are specifically named in or otherwise included within the Perils Insured Against in Section I.

c. This policy does not apply under Section I to loss caused directly or indirectly by nuclear hazard, except that direct loss by fire resulting from the nuclear hazard is covered.

14. **Recovered Property.** If you or we recover any property for which we have made payment under this policy, you or we will notify the other of the recovery. At your option, the property will be returned to or retained by you or it will become our property. If the recovered property is returned to or retained by you, the loss payment will be adjusted based on the amount you received for the recovered property.

15. **Volcanic Eruption Period.** One or more volcanic eruptions that occur within a 72-hour period will be considered as one volcanic eruption.

16. **Loss Payee.** If a loss payee is listed in the Declarations, any loss or damage to personal effects insured by the policy will be payable as interests may appear to the loss payee shown.

### SECTION II – LIABILITY COVERAGES

**COVERAGE E – Personal Liability**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AJ8850PC-0307                    Page 9                    Exhibit A - 9

1. Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

**COVERAGE F – Medical Payments To Others**

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an accident causing "bodily injury". Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage does not apply to you or regular residents of your household except "residence employees". As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location", if the "bodily injury":

    a. Arises out of a condition on the "insured location" or the ways immediately adjoining;

    b. Is caused by the activities of an "insured";

    c. Is caused by a "residence employee" in the course of the "residence employee's" employment by an "insured"; or

    d. Is caused by an animal owned by or in the care of an "insured".

### SECTION II – EXCLUSIONS

1. **Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others** do not apply to "bodily injury" or "property damage":

    a. Which is expected or intended by an "insured"; even if the resulting "bodily injury" or "property damage" is of a different kind, degree or quality than initially expected or intended; or is sustained by a different person, entity, real or personal property;

    b. Arising out of or in connection with a "business" engaged in by an "insured". This exclusion applies but is not limited to an act or omission, regardless of its nature or circumstance, involving a service or duty rendered, promised, owed, or implied to be

    provided because of the nature of the "business";

    c. Arising out of the rental or holding for rental of any part of any premises by an "insured". This exclusion does not apply to the rental or holding for rental of an "insured location":

        (1) On an occasional basis if used only as a residence;

        (2) In part for use only as a residence, unless a single family unit is intended for use by the occupying family to lodge more than two roomers or boarders; or

        (3) In part, as an office, school, studio or private garage;

    d. Arising out of the rendering of or failure to render professional services;

    e. Arising out of a premises:

        (1) Owned by an "insured";

        (2) Rented to an "insured"; or

        (3) Rented to others by an "insured";

        that is not an "insured location";

    f. Arising out of:

        (1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owned or operated by or rented or loaned to an "insured";

        (2) The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or

        (3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph **(1)** or **(2)** above.

        This exclusion does not apply to:

        (1) A trailer not towed by or carried on a motorized land conveyance.

        (2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

            (a) Not owned by an "insured"; or

            (b) Owned by an "insured" and on an "insured location";

        (3) A motorized golf cart when used to play golf on a golf course;

        (4) A vehicle or conveyance not subject to motor vehicle registration which is:

            (a) Used to service an "insured's" residence;

            (b) Designed for assisting the handicapped; or

            (c) In dead storage on an "insured location";

    g. Arising out of:

        (1) The ownership, maintenance, use, loading or unloading of an excluded watercraft described below;

        (2) The entrustment by an "insured" of an excluded watercraft described below to any person; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AJ8850PC-0307                     Page 10                     Exhibit A - 10

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an excluded watercraft described below.

Excluded watercraft are those that are principally designed to be propelled by engine power or electric motor, or are sailing vessels, whether owned by or rented to an "insured". This exclusion does not apply to watercraft:

(1) That are not sailing vessels and are powered by:

  (a) Inboard or inboard-outdrive engine or motor power of 50 horsepower or less not owned by an "insured";

  (b) Inboard or inboard-outdrive engine or motor power of more than 50 horsepower not owned by or rented to an "insured";

  (c) One or more outboard engines or motors with 25 total horsepower or less;

  (d) One or more outboard engines or motors with more than 25 total horsepower if the outboard engine or motor is not owned by an "insured";

  (e) Outboard engines or motors of more than 25 total horsepower owned by an "insured" if:

    (i) You acquire them prior to the policy period; and:

      (a) You declare them at policy inception; or

      (b) Your intention to insure is reported to us in writing within 45 days after you acquire the outboard engines or motors.

    (ii) You acquire them during the policy period.

  This coverage applies for the policy period.

(2) That are sailing vessels, with or without auxiliary power:

  (a) Less than 26 feet in overall length;

  (b) 26 feet or more in overall length, not owned by or rented to an "insured".

(3) That are stored;

**h.** Arising out of:

(1) The ownership, maintenance, use, loading or unloading of an aircraft;

(2) The entrustment by an "insured" of an aircraft to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using an aircraft.

An aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo;

**i.** Caused directly or indirectly by war, including the following and any consequence of any of the following:

(1) Undeclared war, civil war, insurrection, rebellion or revolution;

(2) Warlike act by a military force or military personnel; or

(3) Destruction, seizure or use for a military purpose.

Discharge of a nuclear weapon will be deemed a warlike act even if accidental;

**j.** Which arises out of the transmission of a communicable disease by an "insured";

**k.** Arising out of sexual molestation, corporal punishment or physical or mental abuse; or

**l.** Arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a Controlled Substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled Substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders of a licensed physician.

**m.** Arising out of **pollution**, meaning loss caused by:

(1) The actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at or from the "insured location"; or

(2) Any governmental direction or request that any of you test for, monitor, clean up, remove, contain, treat, detoxify or neutralize pollutants.

Exclusions **e., f., g.,** and **h.** do not apply to "bodily injury" to a "residence employee" arising out of and in the course of the "residence employee's" employment by an "insured".

**2. Coverage E – Personal Liability,** does not apply to:

**a.** Liability:

(1) For any loss assessment charged against you as a member of an association, corporation or community of property owners;

(2) Under any contract or agreement. However, this exclusion does not apply to written contracts:

  (a) That directly relate to the ownership, maintenance or use of an "insured location"; or

**(b)** Where the liability of others is assumed by the "insured" prior to an "occurrence";

unless excluded in (1) above or elsewhere in this policy;

**b.** "Property damage" to property owned by the "insured";

**c.** "Property damage" to property rented to, occupied or used by or in the care of the "insured". This exclusion does not apply to "property damage" caused by fire, smoke, explosion or water damage;

**d.** "Bodily injury" to any person eligible to receive any benefits:

**(1)** Voluntarily provided; or

**(2)** Required to be provided;

by the "insured" under any:

**(1)** Workers' compensation law;

**(2)** Non-occupational disability law; or

**(3)** Occupational disease law;

**e.** "Bodily injury" or "property damage" for which an "insured" under this policy:

**(1)** Is also an insured under a nuclear energy liability policy; or

**(2)** Would be an insured under that policy but for the exhaustion of its limit of liability.

A nuclear energy liability policy is one issued by:

**(1)** American Nuclear Insurers;

**(2)** Mutual Atomic Energy Liability Underwriters;

**(3)** Nuclear Insurance Association of Canada;

or any of their successors; or

**f.** "Bodily injury" to you or an "insured" within the meaning of part **a.** or **b.** of "insured" as defined.

**3.** **Coverage F – Medical Payments to Others,** does not apply to "bodily injury":

**a.** To a "residence employee" if the "bodily injury":

**(1)** Occurs off the "insured location"; and

**(2)** Does not arise out of or in the course of the "residence employee's" employment by an "insured";

**b.** To any person eligible to receive benefits:

**(1)** Voluntarily provided; or

**(2)** Required to be provided;

under any:

**(1)** Workers' compensation law;

**(2)** Non-occupational disability law; or

**(3)** Occupational disease law;

**c.** From any:

**(1)** Nuclear reaction;

**(2)** Nuclear radiation; or

**(3)** Radioactive contamination;

all whether controlled or uncontrolled or however caused; or

**(4)** Any consequence of any of these; or

**d.** To any person, other than a "residence employee" of an "insured", regularly residing on any part of the "insured location".

## SECTION II – ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

**1.** **Claim Expenses.** We pay:

**a.** Expenses we incur and costs taxed against an "insured" in any suit we defend;

**b.** Premiums on bonds required in a suit we defend, but not for bond amounts more than the limit of liability for Coverage E. We need not apply for or furnish any bond;

**c.** Reasonable expenses incurred by an "insured" at our request, including actual loss of earnings (but not loss of other income) up to $50 per day, for assisting us in the investigation or defense of a claim or suit; and

**d.** Interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

**2.** **First Aid Expenses.** We will pay expenses for first aid to others incurred by an "insured" for "bodily injury" covered under this policy. We will not pay for first aid to you or any other "insured".

**3.** **Damage to Property of Others.** We will pay, at replacement cost, up to $500 per "occurrence" for "property damage" to property of others caused by an "insured".

We will not pay for "property damage":

**a.** To the extent of any amount recoverable under Section I of this policy;

**b.** Caused intentionally by an "insured" who is 13 years of age or older;

**c.** To property owned by an "insured";

**d.** To property owned by or rented to an "insured", a tenant of an "insured" or a resident in your household; or

**e.** Arising out of:

**(1)** A "business" engaged in by an "insured";

**(2)** Any act or omission in connection with a premises owned, rented or controlled by an "insured", other than the "insured location"; or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AJ8850PC-0307          Page 12          Exhibit A - 12

(3) The ownership, maintenance, or use of aircraft, watercraft or motor vehicles or all other motorized land conveyances.

This exclusion does not apply to a motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and not owned by an "insured".

4. **Loss Assessment.** We will pay up to $1000 for your share of loss assessment charged during the policy period against you by a corporation or association of property owners, when the assessment is made as a result of:

a. "Bodily injury" or "property damage" not excluded under Section II of this policy; or

b. Liability for an act of a director, officer or trustee in the capacity as a director, officer or trustee, provided:

(1) The director, officer or trustee is elected by the members of a corporation or association of property owners; and

(2) The director, officer or trustee serves without deriving any income from the exercise of duties which are solely on behalf of a corporation or association of property owners.

This coverage applies only to loss assessments charged against you as owner or tenant of the "residence premises".

We do not cover loss assessments charged against you or a corporation or association of property owners by any governmental body.

Regardless of the number of assessments, the limit of $1000 is the most we will pay for loss arising out of:

a. One accident, including continuous or repeated exposure to substantially the same general harmful condition; or

b. A covered act of a director, officer or trustee. An act involving more than one director, officer or trustee is considered to be a single act.

The following do not apply to this coverage:

1. Section II – Coverage E – Personal Liability Exclusion **2.a.(1)**;

2. Condition 1. Policy Period, under **SECTIONS I AND II – CONDITIONS.**

## SECTION II – CONDITIONS

1. **Limit of Liability.** Our total liability under Coverage E for all damages resulting from any one "occurrence" will not be more than the limit of liability for Coverage E as shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions shall be considered to be the result of one "occurrence".

Our total liability under Coverage F for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the limit of liability for Coverage F as shown in the Declarations.

2. **Severability of Insurance.** This insurance applies separately to each "insured". This condition will not increase our limit of liability for any one "occurrence".

3. **Duties After Loss.** In case of an accident or "occurrence", the "insured" will perform the following duties that apply. You will help us by seeing that these duties are performed:

a. Give written notice to us or our agent as soon as is practical, which sets forth:

(1) The identity of the policy and "insured";

(2) Reasonably available information on the time, place and circumstances of the accident or "occurrence"; and

(3) Names and addresses of any claimants and witnesses;

b. Promptly forward to us every notice, demand, summons or other process relating to the accident or "occurrence";

c. At our request, help us:

(1) To make settlement;

(2) To enforce any right of contribution or indemnity against any person or organization who may be liable to an "insured";

(3) With the conduct of suits and attend hearings and trials; and

(4) To secure and give evidence and obtain the attendance of witnesses;

d. Under the coverage – Damage to Property of Others – submit to us within 60 days after the loss, a sworn statement of loss and show the damaged property, if in the "insured's" control;

e. The "insured" will not, except at the "insured's" own cost, voluntarily make payment, assume obligation or incur expense other than for first aid to others at the time of the "bodily injury".

4. **Duties of an Injured Person – Coverage F – Medical Payments to Others.**

The injured person or someone acting for the injured person will:

a. Give us written proof of claim, under oath if required, as soon as is practical; and

b. Authorize us to obtain copies of medical reports and records.

The injured person will submit to a physical exam by a doctor of our choice when and as often as we reasonably require.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AJ8850PC-0307                    Page 13                    Exhibit A - 13

5. **Payment of Claim – Coverage F – Medical Payments to Others.** Payment under this coverage is not an admission of liability by an "insured" or us.

6. **Action Against Us.** No action can be brought against us unless there has been compliance with the policy provisions.

No one will have the right to join us as a party to any action against an "insured". Also, no action with respect to Coverage E can be brought against us until the obligation of the "insured" has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an "insured" will not relieve us of our obligations under this policy.

8. **Other Insurance – Coverage E – Personal Liability.** This insurance is excess over other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

### SECTIONS I AND II – CONDITIONS

1. **Policy Period.** This policy applies only to loss in Section I or "bodily injury" or "property damage" in Section II, which occurs during the policy period.

2. **Concealment or Fraud.**

    a. Under **SECTION I – PROPERTY COVERAGES**, with respect to all "insureds" covered under this policy, we provide no coverage for loss under **SECTION I – PROPERTY COVERAGES** if, whether before or after a loss, an "insured" has:

       (1) Intentionally concealed or misrepresented any material fact or circumstance;

       (2) Engaged in fraudulent conduct; or

       (3) Made false statements;

       relating to this insurance.

    b. Under **SECTION II- LIABILITY COVERAGES**, we do not provide coverage to an "insured" who, whether before or after a loss, has:

       (1) Intentionally concealed or misrepresented any material fact or circumstance;

       (2) Engaged in fraudulent conduct; or

       (3) Made false statements;

       relating to this insurance.

3. **Liberalization Clause.** If we make a change which broadens coverage under this edition of our policy without additional premium charge, that change will automatically apply to your insurance as of the date we implement the change in your state, provided that this implementation date falls within 60 days prior to or during the policy period stated in the Declarations.

   This Liberalization Clause does not apply to changes implemented through introduction of a subsequent edition of our policy.

4. **Waiver or Change of Policy Provisions.**

   A waiver or change of a provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination will not waive any of our rights.

5. **Cancellation.**

    a. You may cancel this policy at any time by returning it to us or by letting us know in writing of the date cancellation is to take effect.

    b. We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations.

       Proof of mailing will be sufficient proof of notice.

       (1) When you have not paid the premium, we may cancel at any time by letting you know at least 10 days before the date cancellation takes effect.

       (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 10 days before the date cancellation takes effect.

       (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

          (a) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy; or

          (b) If the risk has changed substantially since the policy was issued.

          This can be done by letting you know at least 30 days before the date cancellation takes effect.

       (4) When this policy is written for a period of more than one year, we may cancel for any reason at anniversary by letting you know at least 30 days before the date cancellation takes effect.

    c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded pro rata, less any applicable policy fee. The policy fee is fully earned and is not refundable, except in the case where the policy is flat cancelled.

    d. If the return premium is not refunded with the notice of cancellation or when this policy is returned to us, we will refund it within a reasonable time after the date cancellation takes effect.

    e. When we provide evidence of coverage under this policy to meet the requirements of a lease or rental agreement to the "landlord", we may also provide notice of cancellation or

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AJ8850PC-0307                    Page 14                    Exhibit A - 14

nonrenewal to the "landlord". Failure to mail such notice shall not impose any obligation or liability of any kind upon us.

6. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 30 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

7. **Assignment.** Assignment of this policy will not be valid unless we give our written consent.

8. **Subrogation.** An "insured" may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

If an assignment is sought, an "insured" must sign and deliver all related papers and cooperate with us.

Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

9. **Death.** If any person named in the Declarations or the spouse, if a resident of the same household, dies:

a. We insure the legal representative of the deceased but only with respect to the premises and property of the deceased covered under the policy at the time of death;

b. "Insured" includes:

(1) Any member of your household who is an "insured" at the time of your death, but only while a resident of the "residence premises"; and

(2) With respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

In Witness Whereof, we have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by our authorized representative.

SECRETARY

PRESIDENT

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

AJ8850PC-0307                                    Page 15                                    Exhibit A - 15

**IMPORTANT NOTICE**
**TO REPORT A CLAIM CALL**
**1-800-358-0600**

**Always Have Your Policy Number Available**
**When Reporting A Claim**

---

**ARSON PREVENTION PROGRAM**
**American Bankers Insurance Company of Florida will pay**
**$1,000.00**
**for information leading to the conviction of any person for**
**arson to a dwelling or vehicle insured by the Company.**

---

Exhibit A - 16

**AMERICAN BANKERS INSURANCE COMPANY**
**OF FLORIDA**
11222 Quail Roost Drive, Miami, FL 33157-6596 (305) 253-2244

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### RENTERS INSURANCE PROGRAM

# LIMITED FUNGI, WET OR DRY ROT, OR BACTERIA COVERAGE

### SCHEDULE*

| These limits of liability apply to the total of all loss or costs payable under this endorsement, regardless of the number of "occurrences", the number of claims made, or the number of locations insured under this endorsement and listed in this Schedule. | |
|---|---|
| 1.  Section I - Property Coverage Limit of Liability for the Additional Coverage "Fungi", Wet Or Dry Rot, Or Bacteria | **$5,000** |
| 2.  Section II - Coverage E Aggregate Sublimit of Liability for "Fungi", Wet Or Dry Rot, Or Bacteria | **$10,000** |
| *Entries may be left blank if shown elsewhere in this policy for this coverage. | |

**DEFINITIONS**

The following definition is added:

**10.   "Fungi"**

    **a.**    "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

    **b.**    Under Section **II**, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.

**SECTION I - PROPERTY COVERAGES**

**Additional Coverages**

The following Additional Coverage is added:

**12.   "Fungi", Wet Or Dry Rot, Or Bacteria**

    **a.**    The amount shown in the Schedule above is the most we will pay for:

        **(1)**    The total of all loss payable under Section **I** - Property Coverages caused by "fungi", wet or dry rot, or bacteria;

        **(2)**    The cost to remove "fungi", wet or dry rot, or bacteria from property covered under Section **I** - Property Coverages;

        **(3)**    The cost to tear out and replace any part of the building or other covered property as needed to gain access to the "fungi", wet or dry rot, or bacteria; and

        **(4)**    The cost of testing of air or property to confirm the absence, presence or level of "fungi", wet or dry rot, or bacteria whether performed prior to, during or after removal, repair, restoration or replacement. The cost of such testing will be provided only to the extent that there is a reason to believe that there is the presence of "fungi", wet or dry rot, or bacteria.

    **b.**    The coverage described in **12.a.** only applies when such loss or costs are a result of a Peril Insured Against that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at and after the time the Peril Insured Against occurred.

    **c.**    The amount shown in the Schedule for this coverage is the most we will pay for the total of all loss or costs payable under this Additional Coverage regardless of the:

        **(1)**    Number of locations insured under this endorsement; or

        **(2)**    Number of claims made.

    **d.**    If there is covered loss or damage to covered property, not caused, in whole or in

part, by "fungi", wet or dry rot, or bacteria, loss payment will not be limited by the terms of this Additional Coverage, except to the extent that "fungi", wet or dry rot, or bacteria causes an increase in the loss. Any such increase in the loss will be subject to the terms of this Additional Coverage.

This coverage does not increase the limit of liability applying to the damaged covered property.

## SECTION I - PERILS INSURED AGAINST

**12. Accidental Discharge Or Overflow Of Water Or Steam** is amended to include the following:

    **d.**   To a building caused by constant or repeated seepage or leakage of water or the presence or condensation of humidity, moisture or vapor, over a period of weeks, months or years unless such seepage or leakage of water or the presence or condensation of humidity, moisture or vapor and the resulting damage is unknown to all "insureds" and is hidden within the walls or ceilings or beneath the floors or above the ceilings of a structure.

## SECTION I - EXCLUSIONS

The following exclusion is added.

    **9.**  **"Fungi", Wet Or Dry Rot, Or Bacteria**

       "Fungi", Wet Or Dry Rot, Or Bacteria meaning the presence, growth, proliferation, spread or any activity of "fungi", wet or dry rot, or bacteria.

       This Exclusion does not apply:

    **(a)**  When "fungi", wet or dry rot, or bacteria results from fire or lightning; or

    **(b)**  To the extent coverage is provided for in the "Fungi", Wet Or Dry Rot, Or Bacteria Additional Coverage under Section I - Property Coverages with respect to loss caused by a Peril Insured Against other than fire or lightning.

       Direct loss by a Peril Insured Against resulting from "fungi", wet or dry rot, or bacteria is covered.

## SECTION II – CONDITIONS

Condition **1. Limit Of Liability** is deleted and replaced by the following:

**1. Limit Of Liability**

    Our total liability under Coverage **E** for all damages resulting from any one "occurrence" will not be more than the Coverage **E** limit of liability shown in the Declarations. This limit is the same regardless of the number of "insureds", claims made or persons injured. All "bodily injury" and "property damage" resulting from any one accident or from continuous or repeated exposure to substantially the same general harmful conditions will be considered to be the result of one "occurrence".

Our total liability under Coverage **F** for all medical expense payable for "bodily injury" to one person as the result of one accident will not be more than the Coverage **F** limit of liability shown in the Declarations.

However, our total liability under Coverage **E** for the total of all damages arising directly or indirectly, in whole or in part, out of the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of any "fungi", wet or dry rot, or bacteria will not be more than the Section **II** Coverage **E** Aggregate Sublimit of Liability for "Fungi", Wet Or Dry Rot, Or Bacteria. That sublimit is the amount shown in the Schedule. This is the most we will pay regardless of the:

    **1.**  Number of locations insured under the policy to which this endorsement is attached;

    **2.**  Number of persons injured;

    **3.**  Number of persons whose property is damaged;

    **4.**  Number of "insureds"; or

    **5.**  Number of "occurrences" or claims made.

This sublimit is within, but does not increase, the Coverage **E** limit of liability. It applies separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

With respect to damages arising out of "fungi", wet or dry rot, or bacteria described in **1. Limit Of Liability** of this endorsement, Condition **2. Severability Of Insurance** is deleted and replaced by the following:

**2. Severability Of Insurance**

    This insurance applies separately to each "insured" except with respect to the Aggregate Sublimit of Liability described in this endorsement under Section **II** Conditions **1.** Limit Of Liability. This condition will not increase the limit of liability for this coverage.

## SECTIONS I AND II CONDITIONS

Condition **1. Policy Period** is deleted and replaced by the following:

**1. Policy Period.**  This policy applies to loss or costs which occur during the policy period.

**All other provisions of the policy apply.**

Includes copyrighted material of Insurance Services Office with its permission.

Exhibit A - 18

**NOTICE OF INSURANCE INFORMATION PRACTICES**
**CONSUMER RIGHTS**

**Is personal information collected from persons other than individuals proposed for coverage?**
- We get most of our information directly from you.
- In most cases, the application you complete gives us all the information we need to evaluate you or your property for insurance.
- In some insurance transactions, we may not be able to get all of the information we need directly from you. In that case, we may obtain information from outside sources at our own expense.

**Types of information we may collect and how we gather it:**
- From you (or provided to us on your behalf) on applications and other forms you submit to us; for example: your name, address, social security number, telephone number, employer, and income.
- For your transactions with our companies or other nonaffiliated parties; for example: your name, address, telephone number, age, credit card use, insurance coverage, transaction history, claims history, and premiums.
- From consumer reporting agencies, public records and data collection agencies; for example: your obligations with others and your creditworthiness.
- From health care providers, such as doctors and hospitals; for example: your past or present health condition. Health data will be collected only if we need to find out if you are eligible for coverage, to process claims, or prevent fraud, as authorized by you or as the law may permit or require. NOTE: We collect health data only to manage a health-related product or service; for example: life or disability insurance for which you applied.
- From you when you enroll, request a service, or file a claim on one of our websites; for example: your name, address, contract number, credit card issuer and account number, personal identification number, email address, service contract and claim information.
- In some cases, from your visits to our Internet websites; for example: session number and user ID. By reviewing the legal notice, terms of use, site agreement or similar named link appearing on any of our websites that you visit, you may learn of any "cookies" utilized by us and of any additional information that may be collected from you on that site.

**Access to recorded personal information**
Upon your written request and submission of proper identification:
- Within 30 business days of the receipt of your request to access to your recorded personal information, Assurant will inform you of the nature and substance of the recorded personal information.
- You have the right to see and copy personal information in person or obtain a copy by mail. The information must be reasonably described by you and reasonably locatable and retrievable by us. Any information we provide you will be in plain language.
- If recorded, we will disclose the identity of those persons or institutional sources who gave us information within two (2) years prior to your request. If not recorded, we will disclose the names of those to whom such information is normally disclosed.
- You may request correction, amendment, or deletion of recorded personal information by submitting written request to Assurant, 11222 Quail Roost Drive, Miami, FL 33157.
- Assurant shall provide medical record information supplied by a medical care institution or medical professional, along with the identity of the medical professional or medical institution which provided the information, either directly to you or to a medical professional designated by you, which is licensed to provide medical care with respect to the condition to which the information relates. Assurant will notify you if it elects to disclose the information to a medical professional designated by you. For CA and MA residents mental health record information shall be supplied directly to the individual only with the approval of the qualified professional person with treatment responsibility for the condition to which the information relates.
- We may charge a reasonable fee to cover the costs incurred in providing you a copy of recorded information;

**Request to correct, amend, or delete recorded personal information**
Within 30 business days from the date of receipt of your written request to correct, amend, or delete any recorded personal information, we must:
1. Correct, amend or delete the portion of the recorded personal information in dispute; or
2. Notify you of our refusal to make the correction, amendment or deletion, and the reason(s) for the refusal, and your right to file a statement if you disagree.

If we refuse to make a correction, amendment or deletion:
1. You have the right to file a concise statement with us. Your statement: (a) must set forth what you believe to be the correct, relevant, or fair information, and (b) explain why you disagree with our refusal.
2. We will file your statement with any disputed personal information and make it accessible so that anyone reviewing the information will be cognizant of your statement.
3. Furthermore, your statement will be with any subsequent disclosure.

If the information is corrected, the correction will be in writing and provided to you, any person who may have received the incorrect information within the preceding two years, any insurance-support organization that received the information within the preceding seven years, and any insurance support organization that furnished the personal information that has been corrected, amended or deleted.

Exhibit A - 19

**Disclosure of personal or privileged information**

We will not disclose any personal or privileged information about you in connection with this insurance transaction without your written authorization unless we provide you with a form or statement that:

1. is written in plain language;
2. is dated;
3. specifies the types of persons authorized to disclose information about you;
4. specifies the nature of the information authorized to be disclosed;
5. names the insurance company or agent to whom you are authorizing the information to be disclosed;
6. specifies the purpose(s) for which the information is collected;
7. specifies the length of time your authorization remains valid [not to exceed thirty (30) months (24 months in MT; 24 months in VA if the application or request involves property and casualty insurance) from the date of authorization]; and
8. states that you or any person authorized to act on your behalf is entitled to receive a copy of any authorization form or statement.

**We will not disclose any personal or privileged information in connection with this insurance transaction, unless the disclosure is reasonably necessary and meets one of the following descriptions:**

1. To enable an insurance company to perform a business, professional or insurance related function and such insurance company agrees not to disclose the information further without your written authorization unless the further disclosure (a) would be otherwise permitted by the Insurance Information and Privacy Protection Act; or (b) would be necessary for the insurance company to perform its function.
2. To enable the insurance company to (a) determine your eligibility for an insurance benefit or payment; or (b) detect or prevent criminal activity, fraud, material misrepresentation, or material nondisclosure in connection with an insurance transaction.
3. To an insurance institution, agent, insurance-support organization, or self-insurer, provided the information disclosed is reasonably necessary and limited to (a) detect or prevent criminal activity, fraud, material misrepresentation, or material nondisclosure in connection with insurance transactions; or (b) for either the disclosing or receiving insurance institution, agent or insurance-support organization to perform its function in connection with an insurance transaction involving you.
4. To enable a medical-care institution or medical professional for the purpose of (a) verifying insurance coverage or benefits; (b) informing an individual of a medical problem of which the individual may not be aware; or (c) conducting an operations or services audit provided that the information is disclosed as is reasonably necessary.
5. To an insurance regulatory authority.
6. To a law enforcement or other governmental authority (a) to protect the interests of the insurance institution, agent or insurance-support organization in preventing or prosecuting the perpetration of fraud; or (b) if the insurance institution, agent or insurance-support organization reasonably believes that illegal activities have been conducted by the individual.
7. To an actuarial or research study, provided that (a) no individual may be identified in any actuarial or research report; (b) materials allowing the individual to be identified are returned or destroyed as soon as they are no longer needed; and (c) the actuarial or research organization agrees not to disclose the information unless the disclosure would be permitted by the Insurance Information and Privacy Protection Act if made by an insurance institution, agent, or insurance-support organization.
8. To a person whose only use of such information will be in connection with the marketing of a product or service, provided that (a) no medical-record information, privileged information, or personal information relating to an individual's character, personal habits, mode of living, or general reputation is disclosed, and no classification derived from such information is disclosed; (b) you have been given an opportunity to indicate that you do not want personal information disclosed for marketing purposes and have given no indication that you do not want the information disclosed; and (c) the person receiving such information agrees not to use it except in connection with the marketing of a product or service.
9. To an affiliate whose only use of the information will be in connection with an audit of the insurance institution or agent or the marketing of an insurance product or service, provided the affiliate agrees not to disclose the information for any other purpose or to unaffiliated persons.
10. To a group policyholder for the purpose of reporting claims experience or conducting an audit of the insurance institution's or agent's operations or services, provided the information disclosed is reasonably necessary for the group policyholder to conduct the review or audit.
11. To a professional peer review organization for the purpose of reviewing the service or conduct of a medical-care institution or medical professional.
12. To a certificate holder or policyholder for the purpose of providing information regarding the status of an insurance transaction.
13. To a lien holder, mortgagee, assignee, lessor, or other person shown on the records of an insurance institution or agent as having legal or beneficial interest in a policy of insurance. Medical-record information will not be disclosed unless the disclosure would otherwise be permitted by the Information and Privacy Protection Act. The information disclosed will also be limited to only reasonably necessary information to permit you to protect your interest in the policy. (Not applicable to Kansas, Montana, and Oregon residents).
14. To authorized personnel of the Division of Motor Vehicle; and to the Department of Environment, Health, and Natural Resources and the information disclosed is immunization information described in G.S. 130A-154. (Applicable to North Carolina residents only).

Exhibit A - 20

# AMERICAN BANKERS INSURANCE COMPANY
## OF FLORIDA
**11222 Quail Roost Drive, Miami, FL 33157-6596 (305) 253-2244**

### RENTERS INSURANCE PROGRAM
### PERSONAL PROPERTY REPLACEMENT COST ENDORSEMENT

**THIS ENDORSEMENT CHANGES YOUR POLICY.  PLEASE READ IT CAREFULLY.**

**SECTION I - PROPERTY COVERAGES**

For an additional premium, covered losses under **Coverage C - Personal Property** are settled at replacement cost at the time of loss.

Personal Property Replacement Cost coverage will also apply to the following articles or classes of property if they are separately described and specifically insured in this policy:
- **a.** Jewelry;
- **b.** Furs and garments trimmed with fur or consisting principally of fur; and
- **c.** Silverware, silver-plated ware, goldware, gold-plated ware and pewterware, but excluding pens, pencils, flasks, smoking implements, or jewelry.

**1.   PROPERTY NOT ELIGIBLE**

Property listed below is not eligible for replacement cost settlement. Any loss will be settled at actual cash value at the time of loss but not more than the amount required to repair or replace:
- **a.** antiques, fine arts, paintings, and similar articles of rarity or antiquity which cannot be replaced.
- **b.** memorabilia, souvenirs, collectors items and similar articles whose age or history contribute to their value.

**ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.**

- **c.** articles not maintained in good or workable condition.
- **d.** articles that are outdated or obsolete.

**2.   REPLACEMENT COST**

The following loss settlement procedure applies to all property insured under this endorsement:
- **a.** We will pay no more than the least of the following amounts:
  - **(1)** replacement cost at the time of loss without deduction for depreciation;
  - **(2)** the full cost of repair at the time of loss;
  - **(3)** the limit of liability that applies under **Coverage C**;
  - **(4)** any applicable special limits of liability stated in this policy; or
  - **(5)** for loss to any item separately described and specifically insured in this policy, the limit of liability that applies to the item.
- **b.** We will pay no more than the actual cash value for the loss or damage until we receive proof that the repair or replacement is complete.
- **c.** You may make a claim for loss on an actual cash value basis and then make claim within 180 days after the loss for any additional liability in accordance with this endorsement.

# American Bankers Insurance Company of Florida

A Stock Insurance Company

11222 Quail Roost Drive, Miami, FL 33157-6596 • 305.253.2244

## RENTERS INSURANCE PROGRAM
## MANDATORY AMENDATORY ENDORSEMENT
## MONTANA

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY**

If the Declarations indicates that this policy provides Coverage F - Medical Payment To Others, the following statement applies:

**THIS POLICY PROVIDES MEDICAL PAYMENTS TO OTHERS COVERAGE ONLY FOR CERTAIN MEDICAL EXPENSES INCURRED OR MEDICALLY ASCERTAINED BY PERSONS OTHER THAN:**

    **a.  "YOU"; OR**
    **b.  REGULAR RESIDENTS OF "YOUR" HOUSEHOLD EXCEPT RESIDENCE EMPLOYEES.**

**SOME MEDICAL EXPENSES MAY EXCEED THE COVERAGE LIMITATIONS DESCRIBED IN THIS POLICY. IF SO, THEY MAY NOT BE COVERED BY THIS POLICY.**

### DEFINITIONS

Under item **3.** "Insured", the following is added to the definition of "insured":

    **e.**  With respect to "property damage" under SECTION II, any person residing at the "insured location" but only if that person is listed on the lease that applies to the "insured location".

The following definitions are added:

**10.**  "Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.

    Under Section **II**, this does not include any fungi that are, are on, or are contained in, a good or product intended for consumption.

**11.**  "Interested Party" means the person or organization listed on the Declarations Page that has an interest in ensuring coverage exists on the "residence premises".

### SECTION I - PROPERTY COVERAGES

### COVERAGE C - Personal Property

Under **COVERAGE C – Personal Property** the first and second paragraphs are deleted and replaced by the following:

We cover personal property owned or used by an "insured" while it is anywhere in the world. At your request, we will cover personal property owned by:

**1.**  Others while the property is on the part of the "residence premises" occupied by an "insured";

**2.**  A guest while the property is in any residence occupied by an "insured";

**3.**  A "Residence employee" while the property:

    **a.**  Is in any residence occupied by an "insured", or

    **b.**  Is in the physical custody of that employee and that employee is engaged in the service of an "insured."

Our limit of liability for personal property usually located at an "insured's" residence, other than the "residence premises", is 10% of the limit of liability for Coverage C, or $1000, whichever is greater. Personal property in a newly acquired principal residence is not subject to this limitation for the 30 days from the time you begin to move the property there.

Our limit of liability for personal property owned or used by an "insured" and located in a self-storage facility is 20% of the limit of liability for Personal Property or $5,000, whichever is greater. However, this limitation does not apply to personal property usually located in an "insured's" residence, other than the "residence premises".

### SECTION I – PERILS INSURED AGAINST

Item **15.** is deleted and replaced by the following:

**15.  Sudden and accidental damage from artificially generated electrical current.**

### SECTION I - EXCLUSIONS

Item **2. Earth Movement** is deleted and replaced by the following:

**2.  Earth Movement,** meaning:

    **a.**  Earthquake, including land shock waves or tremors before, during or after a volcanic eruption;

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**b.** Landslide, mudslide or mudflow;

**c.** Mine subsidence or sinkhole; or

**d.** Any other earth movement including earth sinking, rising or shifting.

This exclusion **2.** applies regardless of whether any of the above in **2.a.** through **2.d.** is caused by an act of nature or is otherwise caused.

However, direct loss by fire, explosion or theft resulting from any of the above in **2.a.** through **2.d.** is covered.

Item **3. Water Damage** is deleted and replaced by the following:

**3.** **Water Damage**, meaning:

**a.** Flood, including but not limited to flash flood, surface water, waves, including tidal wave and tsunami, tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind, including storm surge;

**b.** Water or water borne material which backs up through sewers or drains or which overflows from a sump, sump pump or related equipment; or

**c.** Water below the surface of the ground, including water which exerts pressure on, or seeps, leaks or flows through a building, sidewalk, driveway, patio, foundation, swimming pool or other structure.

This exclusion applies to, but is not limited to, escape, overflow or discharge, for any reason, of water or waterborne material from a dam, levee, seawall or any other boundary or containment system whether natural, man-made or otherwise made.

However, direct loss by fire, explosion or theft resulting from water damage is covered.

### SECTION I - CONDITIONS

Item **10. Loss Payment** is deleted and replaced with the following:

**10.** **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 30 days after we receive your proof of loss and:

**a.** Reach an agreement with you;

**b.** There is an entry of a final judgment; or

**c.** There is a filing of an appraisal award with us.

If we make a reasonable request for additional information or documents, we shall pay or deny payment for the claim within 60 days of receiving the proof of loss unless we have notified you, your assignee or the claimant of the reasons for failure to pay for the loss in full, or unless we have a reasonable belief that insurance fraud has been committed and we have reported the possible insurance fraud to the commissioner.

The following condition is added:

**17.** **Scheduled Property Clause.** The following is applicable only to scheduled items of personal property for which a premium charge is made based on a specific valuation.

In the event of any total loss or total damage to any scheduled item, the loss will be computed on the stated valuation with no deductions or offsets. However, this shall not affect any right the insurer may have under this policy to repair or replace the property; nor shall this affect any applicable deductible.

### SECTION II – LIABILITY COVERAGES

**COVERAGE F – Medical Payments To Others**

The following is added:

"Reasonable" as used in this Coverage F means those expenses which are consistent with the treatment and expense standards for "bodily injury".

### SECTION II - EXCLUSIONS

Under **2. Coverage E – Personal Liability**, the following exclusion is added:

**g.** Personal injury of any sort, including but not limited to "bodily injury", psychological or emotional injury, or defamatory injury to reputation.

### SECTIONS I AND II - CONDITIONS

Under **5. Cancellation,** paragraphs **b.** and **e.** are deleted and replaced by the following:

**b.** We may cancel this policy only for the reasons stated below by letting you know in writing of the date cancellation takes effect. This cancellation notice may be delivered to you or mailed to you at your mailing address shown in the Declarations.

Proof of mailing will be sufficient proof of notice.

**(1)** When you have not paid the premium, we may cancel at any time by letting you know at least 20 days before the date cancellation takes effect.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

(2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason by letting you know at least 45 days before the date cancellation takes effect.

(3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

(a) If there has been a material misrepresentation of fact which if known to us would have caused us not to issue the policy;

(b) If the risk has changed substantially since the policy was issued, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing this policy;

(c) In the event of substantial breaches of contractual duties, conditions or warranties;

(d) Upon a determination by the Insurance Commissioner that continuation of the policy would place us in violation of the Montana Insurance Code;

(e) Due to our financial impairment; or

(f) For any other reasons approved by the Insurance Commissioner.

This can be done by letting you know at least 45 days before the date cancellation takes effect.

(4) When this policy is written for a period of more than one year we may cancel for any reason at anniversary by letting you know at least 45 days before the date cancellation takes effect.

e. When we provide evidence of coverage under this policy to meet the requirements of a lease or rental agreement to the "landlord" or "interested party", we may also provide notice of cancellation or nonrenewal to the "landlord" or "interested party". Failure to mail such notice shall not impose any obligation or liability of any kind upon us.

**Item 6. Nonrenewal**, is deleted and replaced with the following:

6. **Nonrenewal.** We may elect not to renew this policy. We may do so by delivering to you, or mailing to you at your mailing address shown in the Declarations, written notice at least 45 days before the expiration date of this policy. Proof of mailing will be sufficient proof of notice.

The following conditions are added:

10. **Conformity with Montana Statutes.**

The provisions of this policy conform to the minimum requirements of Montana law and control over any conflicting statutes of any state in which the "insured" resides on or after the effective date of this policy.

Any provision of this policy (including endorsements which modify the policy) that does not conform to the minimum requirements of a Montana statute is amended to conform to that statute.

11. **Renewal with Altered Terms.**

If we offer or purport to renew a policy on less favorable terms, at a higher rate or at a higher rating plan, the new terms, rate, or rating plan will take effect on the policy renewal date only if we have mailed or delivered notice of the new terms, rate, or rating plan to you at least 45 days before the expiration date.

**ALL OTHER TERMS AND CONDITIONS OF THE POLICY REMAIN THE SAME.**

Includes copyrighted material of Insurance Services Office, Inc., with its permission.



## Privacy Notice

You are a valued customer and we strive to meet your privacy concerns. We want to make sure your personal information is protected and that you understand the policies that protect you.

Assurant companies and other insurers that operate under this Privacy Notice ("We") provide various insurance products, including pre-funded funeral insurance, mobile insurance, credit insurance, and membership products. Our products may be sold directly to individuals, sold through our agents or offered on behalf of other companies. These other companies may be banks, finance companies, retailers, utilities, automobile dealers, manufactured housing, mortgage companies or funeral homes.

Pursuant to the United States Gramm-Leach Bliley Act, companies that qualify as financial institutions must provide their customers with a Privacy Notice on an annual basis. If you have asked not to be solicited, that request is still in effect. You do not need to contact us again. **This is not a solicitation.** You do not need to respond.

This Privacy Notice gives you examples of the types of data we lawfully collect, use, share or disclose; and the kinds of companies with whom we may lawfully share such data. These examples serve only as illustrations; they should not be considered all of the data we may lawfully collect, use or share. Below is our privacy pledge to you:

*Our Privacy Principles:*

- We do not sell your personal information.

- We do not share your personal information with anyone outside the Assurant family of affiliated companies unless you expressly authorize the sharing, or it is permitted or required by law.

- We do not allow those with whom we do business to use our customer information for their own marketing purposes unless there is a valid joint marketing agreement.

- We will not collect, use, share or disclose any of your information if prohibited by law.

- We contractually require any person or business providing products or services on our behalf to safeguard our customer information.

*Information We May Collect*

The level of information we may collect varies depending upon the type of services and products we offer you. Here are some examples of the types of information we may collect and how we gather it:

- From you (or provided to us on your behalf), on applications and other forms you submit to us; for example: your name, address, social security number, telephone number, employer and income.

- From your transactions with our companies or other non-affiliated parties; for example: your name, address, telephone number, age, credit card use, insurance coverage, transaction history, claims history and premiums.

- From consumer reporting agencies, public records and data collection agencies; for example: your obligations with others and your creditworthiness. However, we will not use your credit score, credit report or any other credit-related information in jurisdictions where it is prohibited by law.

- From health care providers, such as doctors and hospitals; for example: your past or present health condition. Health data will be collected **only** if we need to find out if you are eligible for coverage, process claims or prevent fraud, as authorized by you or as the law may permit or require. NOTE: We collect health data only to manage a health-related product or service; for example: life or disability insurance, for which you applied, or as otherwise permitted by law.

- From you when you enroll, request a service, or file a claim on one of our websites; for example: your name, address, contract number, credit card issuer and account number, personal identification number, e-mail address, service contract and claim information.

- From your visits to our internet websites; for example: session number and user ID. By reviewing our Online Privacy Policy along with the Legal Notice, Terms of Use, Site Agreement or similarly named link appearing on any of our websites, you may learn of any "cookies" utilized by us and of any additional information that may be collected from you on that site.

DF00965A-0419

*Information We May Disclose or Share and With Whom*

We may lawfully share customer information with other entities as needed to deliver products and services to you, provide customer service or handle your account.

*Disclosures Permitted by Law*

We share customer information as described above and as permitted by law.

*Disclosures for Joint Marketing and Servicing*

We may lawfully share customer information with persons or organizations inside or outside our family of companies that perform marketing services for us or with whom we have joint marketing agreements.

*Information Regarding Former Customers*

We treat the information of prospective and former customers in the same manner as existing customers with respect to the use of personal information.

*Our Security Procedures*

We restrict access to customer information to those employees whom we know have a valid business purpose to have access to such data. We maintain physical, electronic and procedural safeguards. We require those who provide services for us and to whom we provide your data to keep your information safeguarded and confidential.

*Changes to This Privacy Notice*

We reserve the right to change this Privacy Notice at any time. If we make material changes, we will provide current customers a new notice that describes our new practices and will post it on our internet websites.

The following companies underwrite or market services under the Assurant service mark and adhere to this Privacy Notice. We value our relationship with you. Should you have any questions about our Privacy Notice, please write to us at The Assurant Privacy Office, P.O. Box 979047, Miami, FL 33197-9047.

Affiliates:

| | |
|---|---|
| American Bankers Insurance Company of Florida | National Product Care Company (NPCC) |
| American Bankers Life Assurance Company of Florida | Reliable Lloyds Insurance Company |
| American Memorial Life Insurance Company® | Service Plan, Inc. (SPI) |
| American Security Insurance Company | Standard Guaranty Insurance Company |
| Caribbean American Life Assurance Company | Time Insurance Company |
| Caribbean American Property Insurance Company | Union Security Insurance Company |
| Consumer Program Administrators, Inc. (CPI) | Union Security Life Insurance Company of New York |
| Dealers Performance, Inc. (DPI) | Voyager Indemnity Insurance Company |
| John Alden Life Insurance Company | Virginia Surety Company, Inc. (VSC) |

Non-Affiliates:

| | |
|---|---|
| American Reliable Insurance Company | Ranchers and Farmers Mutual Insurance Company |
| Hallmark County Mutual Insurance Company | Republic Lloyds |
| IA American Life Insurance Company | Southern County Mutual Insurance Company |

DF00965A-0419