IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| AMERICAN BANKERS INSURANCE COMPANY OF FLORIDA,<br><br>Plaintiff/Counter Defendant,<br><br>vs.<br><br>MARY CAMERON,<br><br>Defendant/Counter Claimant. | CV 19-138-BLG-TJC<br><br>**ORDER** |

Plaintiff American Bankers Insurance Company of Florida ("American Bankers") filed this action against Defendant Mary Cameron ("Cameron") seeking declaratory judgment as to its duty to defend and indemnify Cameron in relation to an underlying state court action. (Doc. 1.)

Presently before the Court is American Bankers' Motion for Summary Judgment. (Doc. 21). The motion is fully briefed and ripe for the Court's review.

**I.    BACKGROUND**

Cameron resides in Carbon County, Montana, and is a member of the City Council for the town of Red Lodge. On October 17, 2019, Cameron was named as defendant in a lawsuit entitled *Rebecca Narmore v. Mary Cameron*, Carbon County District Court, Cause No. DV-19-98 (the "Underlying Action"). (Doc. 1-

1

2.)  Narmore is the City Attorney for Red Lodge.  The Underlying Action asserts claims against Cameron for defamation by libel and intentional infliction of emotional distress based on the alleged dissemination of false statements on Facebook.

The Underlying Complaint alleges in relevant part:

### Count 1 – Defamation by Libel

. . .

9.  Defendant published via the world wide web through the platform commonly known to [sic] as "Facebook" under the title of "Between Two Ferns With City Counsel"
    a.  Defendant alleged that Plaintiff is corrupt;
    b.  Defendant stated, "like a tomato, if it smells rotten and looks rotten, it generally it[sic]."; *See Exhibit 1*, page 2.;
    c.  Defendant stated, "[t]he stench of the toxic carpet bagger has infected decent people. *See Exhibit 2*.

10. Defendant is a sitting member of the City Council for the Town of Red Lodge.

11. Defendant is the elected representative for Ward 1.

12. Plaintiff's emotional distress includes physical manifestations.

### Count 2 – Intentional Infliction of Emotional Distress

13. Plaintiff incorporates herein paragraphs 1 through 12 by reference.

14. Defendant knew the dissemination of false narratives concerning Plaintiff to support her personal agenda would be damaging to Plaintiff's personal life.

15. Defendant knew the dissemination of false narratives concerning Plaintiff to support her personal agenda would be damaging to Plaintiff's professional life.

16. Defendant's continued attacks in written and spoken form is extreme and outrageous conduct.

17. Defendant's intentional acts, knowingly distributing false information about Plaintiff caused Plaintiff's emotional distress.

18. Defendant has intentionally caused Plaintiff serious and severe emotional distress.

19. Plaintiff's emotional distress includes physical manifestations.

(Doc. 1-2 at ¶¶ 9-19.)

Copies of the allegedly defamatory Facebook posts were attached to the Underlying Complaint, as Exhibits 1 and 2. (*Id.* at 6-8.) Exhibit 1 reflects that a Facebook user identified as Mary Cameron stated:

> a few months ago the council voted to hire their own attorney to protect us from the 'city' we were elected to govern, because the city attorney had 'veto' power over the agenda (still does) and we can't get the legislation we've discussed and approved of on the agenda for action.  It is still happening.  In my opinion this whole administration including the mayor and department heads is corrupt.  It sounds silly that in a little town of 2,100 generally nice folks that we would have a corrupt administration, but, like a tomato, if it smells rotten and looks rotten, it generally is.

(*Id.* at 6.)

Exhibit 2 contains the following subsequent comment from Cameron: "yup. The stench of the toxic carpet bagger has infected decent people." (*Id.* at 8.)

/ / /

3

At the time, Cameron was insured under a Renter's policy, Policy No. 9053586 ("Policy"), effective August 7, 2019 to August 7, 2020, with a personal liability policy limit of $100,000 per occurrence from American Bankers.

The Policy provided Personal Liability coverage as follows:

**SECTION II – LIABILITY COVERAGES**

**COVERAGE E – PERSONAL LIABILITY**

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

**1.** Pay up to our limit of liability for the damages for which the "insured" is legally liable. Damages include prejudgment interest awarded against the "insured"; and

**2.** Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the "occurrence" equals our limit of liability.

(Doc. 24-1 at 9-10.)

The Policy provided the following relevant definition:

**6.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
 **a.** "Bodily Injury"; or
 **b.** "Property damage".

(*Id.* at 2.)

The Policy also contained the following "intentional acts" exclusion:

4

**SECTION II – EXCLUSIONS**

1. **Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others** do not apply to "bodily injury" or "property damage":
   **a.** Which is expected or intended by an "insured"; even if the resulting "bodily injury" or "property damage" is of a different kind, degree or quality than initially expected or intended; or is sustained by a different person, entity real or personal property;

(*Id.* at 10.)

Cameron tendered to American Bankers the defense and indemnification of the Complaint in the Underlying Action. American Bankers determined the Policy did not provide coverage for the allegations against Cameron, but agreed to share in Cameron's defense with the Montana Municipal Insurance Authority, subject to a full reservation of rights.

On December 11, 2019, American Bankers filed this action seeking a declaration that no coverage exists under the Policy for any of the claims asserted against Cameron in the Underlying Action. (Doc. 1.)

**II.   DISCUSSION**

American Bankers now moves for summary judgment on the grounds that the claims in the Underlying Complaint arise entirely out of allegations of intentional conduct by Cameron, and as a result do not constitute a covered "occurrence" under the Policy and/or are excluded by the Policy's intentional acts exclusion. American Bankers therefore seeks a declaration that it has no duty to

defend or indemnify Cameron. Cameron counters that the factual allegations in the Underlying Complaint leave open the possibility that she did not objectively intend or expect to damage Narmore, and therefore, American Bankers cannot unequivocally demonstrate that there is no possibility of coverage. Thus, Cameron asserts American Bankers is required to defend her in the Underlying Action.

### A. Legal Standards

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Id.* at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In ruling on a motion for summary judgment, the Court must view all inferences drawn from the underlying facts in the light most favorable to the non-moving party. *Id.* at 587.

### B. Duty to Defend

The Court's jurisdiction over this action is based on diversity of citizenship. Thus, the Court must apply the substantive law of Montana. *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002). In Montana, the interpretation of an insurance contract is a question of law. *Scentry Biologicals, Inc. v. Mid-continent Cas. Co.*, 319 P.3d 1260, 1264 (2014).

It is well-settled in Montana that an insurer's duty to defend is independent from and broader than its duty to indemnify. *Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381, 385 (Mont. 2004). The "duty to defend arises when a complaint against an insured alleges facts, which if proved, would result in coverage." *Tidyman's Mgmt. Services, Inc. v. Davis*, 330 P.3d 1139, 1149 (Mont. 2014) citing *Staples*, 90 P.3d at 385 (Mont. 2004); *State Farm Mut. Auto. Ins. Co. v. Freyer*, 312 P.3d 403, 410-11 (Mont. 2013). Whereas, the duty to indemnify "arises only if coverage under the policy is actually established." *Freyer*, 312 P.3d at 410-11.

The determination of whether an insurer has a duty to defend is made by comparing the factual allegations in the complaint to the coverage afforded under the policy. *Graber v. State Farm Fire & Cas. Co.*, 797 P.2d 214, 217 (Mont. 1990); *Staples*, 90 P.3d at 385. In comparing allegations of liability with policy language, "a court must liberally construe allegations in a complaint so that all doubts about the meaning of the allegations are resolved in favor of finding that the obligation to defend was activated." *Staples*, 90 P.3d at 385. The "fundamental protective purpose of an insurance policy," paired with the insurer's obligation to provide a defense, require coverage exclusions to be narrowly construed. *Id*. Therefore, the insurer must "construe the factual assertions from the perspective of the insured." *Id.* "Where a claim falls unequivocally outside the policy's coverage, however, there is nothing for the court to construe, and no reason to impose a duty to defend." *Twite Fam. P'ship v. Unitrin Multi Line Ins.*, 192 P.3d 1156, 1160 (Mont. 2008). Accordingly, the insurer has a duty to defend unless there is an "unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage." *Staples*, 90 P.3d at 385. The Montana Supreme Court has also held that where there is a dispute as to the facts relevant to coverage, the dispute must be resolved in favor of finding a duty to defend. *Id.* at 385-86.

/ / /

      a.      Whether the Allegations in the Underlying Complaint Constitute an "Occurrence" Triggering the Duty to Defend

Cameron bears the burden of proving the allegations in the Underlying Action constitute an "occurrence" within the Policy's initial grant of coverage. *Travelers Cas. & Sur. Co. v. Ribi Immunochem Rsch., Inc.*, 108 P.3d 469, 476 (Mont. 2005). The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Doc. 24-1 at 2.) Montana law defines "accident" as an "unexpected happening that occurs without intention or design on the part of the insured." *Safeco Ins. Co. of America v. Liss*, 16 P.3d 399, 405 (Mont. 2000). The Montana Supreme Court has clarified that an accident may include intentional acts so long as the harmful consequences of those acts were not objectively intended or expected from the standpoint of the insured. *Employers Mut. Cas. Co. v. Fisher Builders, Inc.*, 371 P.3d 375, 378-80 (Mont. 2016).

Under *Fisher*, the following two part test is used to determine whether the conduct in question was an accident, and thereby constitutes an "occurrence": "1) whether the act itself was intentional, and 2) if so, whether the consequence or resulting harm stemming from the act was intended or expected from the actor's standpoint." *Fisher*, 371 P.3d at 378. If the answer to either question is no, then the act is an "occurrence." *Id.* The question under the second prong is an

objective inquiry. *Id.* at 379. That is, whether a reasonable person in the insured's position could objectively expect their actions to cause harm. *Id.*

The Montana Supreme Court has recognized that defamation is not exclusively an intentional tort. *McLeod v. State*, 206 P.3d 956 (Mont. 2009). In *McLeod*, the Montana Supreme Court explained that defamation is "effected by libel or slander." *Id.* at 960 (citing Mont. Code Ann. § 27-1-801). Libel, in turn, is "a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation that exposes any person to hatred, contempt, ridicule, or obloquy or which causes a person to be shunned or avoided or that has a tendency to injure a person in the person's occupation." Mont. Code Ann. § 27-1-802. The Court noted that "[p]ublication of defamatory matter is its communication intentionally *or by a negligent act* to one other than the person defamed." *McLeod*, 206 P.3d 960, n.2 (emphasis added). Thus, defamation can be accomplished by a negligent act.

Here, however, the Underlying Complaint alleges Cameron "knowingly distributed false information about Plaintiff" and that her acts were "intentional." (Doc. 1-2 at ¶ 17.) Cameron does not claim that she unintentionally or negligently posted the Facebook comments at issue in the Underlying Action. Thus, Cameron does not appear to dispute that she acted intentionally under the first prong of the *Fisher* test.

The Court must therefore turn to the second question under *Fisher* and determine whether the harm stemming from Cameron's actions could objectively be intended or expected.  Cameron argues that based on the actual facts alleged in the Underlying Complaint, the answer is no.  American Bankers contends the objective inquiry is unnecessary because the Underlying Complaint alleges Cameron intentionally caused Narmore's claimed damages.

As noted above, Narmore's claim for intentional infliction of emotional distress in Count 2 of the Underlying Complaint alleges that Cameron "knew the dissemination of false narratives concerning Plaintiff" would be damaging to both Plaintiff's personal and professional life, and that Cameron "intentionally caused Plaintiff serious and severe emotional distress." (Doc. 1-2 at ¶¶ 14-15, 18.)  But the Court is not limited to considering the conclusions stated in the Underlying Complaint.  "Coverage is based upon the acts giving rise to the claims, not necessarily the language of the complaint." *New Hampshire Ins. Grp. v. Strecker*, 798 P.2d 130, 132 (Mont. 1990).  *See also Town of Geraldine v. Montana Mun. Ins. Auth.*, 198 P.3d 796, 800 (Mont. 2008) ("[I]t is the acts giving rise to the complaint which form the basis for coverage, not the complaint's legal theories or conclusory language.").  Thus, the Court must consider all the facts alleged in the Underlying Action in determining whether there is a duty to defend.

The operative facts in the Underlying Action include the contents of the Facebook posts that were attached as Exhibits to the Underlying Complaint. See e.g., *Montana Metal Bldgs., Inc. v. Shapiro*, 942 P.2d 694, 697 (1997) (effect of attaching and incorporating documents is to make those attachments a part of the complaint for all purposes).

Review of the Facebook posts shows that Cameron did not name Narmore specifically or individually. (Doc. 1-2 at 6-9.) Cameron did not, as Narmore alleges, call her corrupt. (*Id.* at ¶ 9(a). Cameron actually posted, "[i]n my opinion this whole administration including the mayor and department heads is corrupt." (*Id.* at 6.) Cameron also likened the administration to a "rotten tomato." (*Id.*) But it is not clear from the post who is included within the "administration," and who may be considered a "department head." At most, Cameron potentially later made an oblique reference to Narmore in a subsequent post when she used the phrase "carpet bagger." (*Id.* at 8.) It is alleged in the Underlying Complaint that Narmore spent the majority of her life in Alabama, but it is unclear whether other members of the Red Lodge city government are also not Red Lodge natives. Nevertheless, because Cameron did not name Narmore, nor make a reference which would have made it apparent to anyone reading the post that it was intended to refer to Narmore, it is reasonable to conclude that Cameron did not intend or expect to damage Narmore.

Moreover, even if Cameron intended to refer to Narmore in her posts, that does not establish that she intended to harm Narmore. As recognized by the Seventh Circuit, "defamation is often not intended or expected to injure anyone. The defamer may have made a good-faith though inadequate attempt to conceal the victim's name, may have thought the victim's reputation already impaired beyond possibility of further damage, or the most common case, may have thought the defamatory statement true, in which event there would be no injury in a legal sense." *Cincinnati Ins. Co. v. Eastern Atlantic Ins. Co.,* 260 F.3d 742, 746 (7th Cir. 2001) (internal citations omitted). Thus, even if the post was intended to refer to Narmore, Cameron may have, for example, reasonably believed she had adequately concealed Narmore's identity.

Therefore, resolving all doubt about the meaning of the allegations in the Underlying Complaint in favor of finding the obligation to defend, it is reasonable to conclude that a person in Cameron's position objectively would not have intended or expected the statements to damage Narmore. Accordingly, it has not been unequivocally demonstrated that the claim against Cameron does not fall within the policy's coverage. The allegations in the Underlying Complaint are sufficient to impose a duty to defend.[1]

---

[1] American Bankers also argues the claim for intentional infliction of emotional distress does constitute a covered "occurrence" because it is based on intentional conduct. But even if the intentional infliction of emotion distress claim does not

13

    b.  <u>Whether the Intentional Acts Exclusion Bars Coverage</u>

"The insurer has the burden of proving the applicability of an exclusionary clause[.]" *Ribi*, 108 P.3d at 476. Montana courts apply the same two-part test from *Fisher* to determine whether coverage is barred under an intentional acts exclusion like the one in the Policy here. *See Am. Reliable Ins. Co. v. Lockard*, 2018 WL 264962 *3 (D. Mont. Jan. 2, 2018) (explaining that pursuant to *Fisher*, "the 'Expected or Intended Injury' exclusion is not triggered if there is a possibility that the conduct had unintended and unexpected consequences to the victim."); *Am. Reliable Ins. Co. v. Vlieland*, 2018 WL 1582551 *5 (D. Mont. March 30, 2018) (same). As discussed above, the Court has determined there is a possibility that Cameron's conduct had unintended or unexpected consequences to Narmore. Thus, the intentional acts exclusion does not apply.

  **C.**  **Duty to Indemnify**

Having determined American Bankers has a duty to defend, the Court finds it is premature to resolve whether American Bankers has a duty to indemnify. Generally, "courts must caution against determining questions of indemnity until

---

trigger the duty to defend, an insurer must defend all counts alleged in a complaint so long as one count potentially triggers coverage. *J & C Moodie Properties, LLC v. Deck*, 384 P.3d 466, 472 (Mont. 2016). Here, the Court has determined the defamation claim potentially triggers coverage. Thus, American Bankers has a duty to defend the entire Underlying Action.

liability is established in the underlying proceeding." *Vlieland*, 2018 WL 1582551, at *3. As the Court previously explained in denying Cameron's Motion to Dismiss (Doc. 16), federal courts lack subject matter jurisdiction to decide issues which are not ripe. *Chandler v. State Farm Mut. Auto Ins. Co.*, 598 F.3d 1115, 1121-22 (9th Cir. 2010.) Typically, a claim for declaratory judgment regarding an insurer's duty to indemnify is not ripe until there has been a resolution of the underlying claim. *Vlieland*, 2018 WL 1582551 at *3; *Nat'l Surety Corp. v. Mack*, 2016 WL 590453, *2 (D. Mont. Feb. 11, 2016); *Yellowstone Dev., LLC v. United Fire & Cas. Co.*, 2011 WL 13077970, *2 (D. Mont. Aug. 11, 2011); *Skinner v. Allstate Ins. Co.*, 127 P.3d 359, 363 (Mont. 2005).

Here, the Underlying Action remains pending. The Court therefore finds the interests of judicial economy and efficiency support a continued stay of the indemnity claim, pending disposition of the Underlying Action.

## III.   CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that American Bankers' Motion for Summary Judgment (Doc. 21) is **DENIED**.

DATED this 14th day of September, 2021.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge